UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
CASE NO.: 2:22-cv-00021-JLB-MRM

YOLANDA SANTIAGO, individually
and on behalf of all others similarly situated,

      Plaintiff,

v.

CONCIERGE SENIOR LIVING, LLC
d/b/a THE PINEAPPLE HOUSE and
SENIOR CARE RESIDENCES SAPPHIRE
LAKES AT NAPLES, LLC

      Defendants.

_____/

## JOINT MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS AND TO DISMISS ACTION WITH PREJUDICE

Plaintiff Yolanda Santiago (the "Named Plaintiff"), individually and on behalf of the class of individuals that she seeks to represent ("Class Members"), as well as Opt-In Plaintiffs Denisse Calderon, Nora Teresias and Marcha Auguste ("Opt-in Plaintiffs") and Defendants Senior Care Residences Sapphire Lakes at Naples, LLC ("Senior Care") and Concierge Senior Living, LLC ("Concierge") file this Joint Motion for Approval of Settlement and request that the Court approve the Parties' Collective Action Settlement Agreement and Release of Claims (the "Settlement Agreement") and dismiss this action with prejudice.

## INTRODUCTION

The Settlement Agreement encompasses the claims of a class consisting of approximately 69 hourly employees who worked for Senior Care at the facility known as the Pineapple House at Sapphire Lakes between June 1, 2020 and May 31, 2021. The Parties have agreed, subject to Court approval, to resolve this wage and hour matter for significant monetary relief. The settlement satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it was reached after significant information exchange and contested litigation, and was the result of arm's length settlement negotiations conducted by an experienced wage and hour mediator with both parties being represented by experienced counsel well versed in wage and hour law. Accordingly, the Parties request that the Court: (1) approve as fair, adequate and reasonable the $78,500.00 settlement set forth in the Settlement Agreement attached as Exhibit A; (2) approve the proposed Notice and Claim Form attached as Exhibits B and C and the proposed method for distribution; (3) approve the specific settlements with the Named Plaintiff and Opt In Plaintiffs, attached as composite Exhibit D; (4) approve Plaintiffs' request for attorneys' fees in the amount of $25,905.00 and reasonable reimbursable expenses of $912.00; and (5) dismiss the Lawsuit with Prejudice, with the Court retaining jurisdiction and ordering the clerk to keep the case open for 45

days after the Extended Consent Deadline (as defined below) in order to allow the parties to file the Claim Forms.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.    Overview of Parties Involved**

This lawsuit was filed on January 12, 2022 by the Named Plaintiff, who was an hourly employee at The Pineapple House.  Although she originally sued Concierge, the parties later added Senior Care by agreement as a defendant, as Senior Care was the actual employer.

The class of employees ("Class Members") who will receive notice and a claim form include the approximately 69 current and former Senior Care employees who (a) were paid hourly, (b) worked for Senior Care at the facility known as The Pineapple House at Sapphire Lakes at some point in time between June 1, 2020 and May 31, 2021; (c) who were subject to automatic meal break deductions during a week in which they worked over forty hours or would have worked over forty hours but for the automatic meal break deduction. Excluded from the definition of Class Members are Opt-In Plaintiff Denisse Calderon, who was already compensated for a claim related to automatic meal break deductions and one individual who already settled (with court approval) an FLSA lawsuit.

3

II.    **Overview of Claims and Investigation**

The claims resolved by the Settlement Agreement arise from alleged improper payment of overtime due to a practice of making automatic meal deductions during the relevant time period June 1, 2020 and May 31, 2021 when employees did not otherwise clock out for their meal break and worked a full shift. Before and during the litigation, the Named Plaintiff and Class Counsel conducted a thorough investigation into the merits of the claims and defenses.  Class Counsel conducted in depth interviews with the Named Plaintiff, Opt-In Plaintiffs as well as numerous other witnesses, and reviewed extensive written materials uncovered during their investigation.

Senior Care produced and Class Counsel reviewed relevant time and pay data to determine the approximate value of the claim.

III.    **History of Settlement Negotiations**

The parties engaged in extensive information exchange and settlement talks leading up to a full day private mediation with experienced FLSA mediator Marlene Quintana, who was engaged due to her particular expertise mediating FLSA collective actions.  Leading up to that process, Senior Care voluntarily produced back up and summary data related to every class member showing the exact number of time automatic meal break deductions were taken from each class member, whether those deductions were during overtime or non-overtime weeks

and their last pay rate. That mediation was successful and the parties were eventually able to come to an agreement on all of the settlement terms.

In April 2022, the Collective Action Settlement Agreement was signed by all parties. The fully executed Collective Action Settlement Agreement is attached as Exhibit A.

## SUMMARY OF THE SETTLEMENT TERMS

### I.    The Maximum Settlement Amount

The parties have agreed that the Maximum Settlement Amount will be $78,500.00. The Maximum Settlement Amount fully resolves and settles the Lawsuit, including the claim for attorneys' fees and costs to be approved by the Court, any and all amounts to be paid to or on behalf of Class Members, all Opt-In Plaintiffs and the Named Plaintiff, the mediator fees and the Claims Administrator's fees and costs. Class Members must timely submit a Claim Form in order to receive a settlement payment.

### II.    Eligible Class Members

Eligible settlement Class Members include the approximately 69 current and former Senior Care employees who (a) were paid hourly, (b) worked for Senior Care at the facility known as The Pineapple House at Sapphire Lakes at some point in time between June 1, 2020 and May 31, 2021; (c) who were subject to automatic meal break deductions during a week in which they worked over

forty hours or would have worked over forty hours but for the automatic meal break deduction. Within 14 days of the Court's issuance of an Approval Order, Senior Care will provide the Claims Administrator the following information, in electronic form, for all Class Members: name, social security number, last known addresses, percent share of Net Settlement Amount (the "Class List"). Senior Care will provide Class Counsel with the same list, but that list will not include the social security numbers or addresses for the Class Members. Within fifteen business days of receiving the Class List from Senior Care, the Claims Administrator will mail the proposed Notice and Claim Form to each Class Member. The proposed Notice alerts each Class Member to the terms of the settlement, their estimated individual settlement allocation, the scope of the release and the timetable for participation.

## III.    Class Allocation Formula

The allocation to the Class Members will be made from the Net Settlement Amount. The allocation of each Class Member's award, which is their proportionate share of the Net Settlement Amount, was calculated as follows. First, the total amount of time automatically deducted between June 1, 2020 and May 31, 2021 from each Class Member both during overtime and non-overtime weeks was calculated. The value of that time was then calculated at the Class Member's last hourly rate. Overtime hours were valued at time and one half.

Time automatically deducted during overtime weeks was then valued at twice that of time automatically deducted during non-overtime weeks.  Each Class Member's amount was then divided by the total amount to arrive at the Class Member's proportionate share of the Net Settlement Amount.

Each Class Member's settlement amount, which is calculated by multiplying their proportionate share times the Net Settlement Amount, is referred to as their "Settlement Award."  A Class Member will receive their Settlement Award by timely returning a completed Claim Form and becoming a Participating Class Member.

## IV.    Releases

Class Members who participate in the settlement by executing and returning their Claim Form ("Participating Class Members") will release only wage and hour claims of any type, including all FLSA claims.  Class Members who do not participate will not release any claims.  The Named Plaintiff and Opt In Plaintiff, in exchange for their service to the class and execution of a general release, will receive general release payments.

## V.    General Release Payments

The Named Plaintiff and Opt In Plaintiff, in exchange for their service to the class and execution of a general release, will receive general release payments.

## VI.    Settlement Claims Administration

The parties have retained Phoenix Class Action Administrative Solutions to serve as the Claims Administrator.  The claim administration fee of $5,000.00 will be paid out of the Net Settlement Amount.

## VII.    Attorneys' Fees and Litigation/Arbitration Costs

Under the terms of the Settlement Agreement, subject to Court approval, the parties agree that Plaintiffs' counsel will receive $25,905.00, which constitutes 33% of the Maximum Settlement Amount plus reasonable expenses of $912.00, totaling $26,817.00, which represents payment of all reasonable attorneys' fees and costs associated with the Lawsuit.  (See Exhibit E, Attorney R. Edward Rosenberg's Declaration in Support).

## VIII.    Supplemental Statement in Compliance with Order (Doc. 19)

(a)    Unpaid Minimum Wage Hours – The Lawsuit did not include a claim for minimum wage violations.

(b)    Unpaid Overtime Hours – Following review of the automatic meal break deduction records, the Parties agree that Named Plaintiff Yolanda Santiago did not have any potentially unpaid overtime hours as a result of automatic meal break deductions and that Opt-In Plaintiff Denisse Calderon had already been paid in full at the conclusion of her employment for all overtime (and non-overtime)

hours that resulted from automatic meal break deductions. Opt-In Plaintiff Marcha Auguste had a single week in which adding back her meal break deductions would push her over forty hours, which resulted in a total number of potentially unpaid overtime hour of 1.18 hours, assuming she did not actually take a meal break during the time she was automatically clocked out. Her hourly rate at the time was $13.39. Opt In Plaintiff Nora Teresias had two weeks in which adding back her meal break deductions would push her over forty hours, which resulted in a total number of potentially unpaid overtime hours of 4.25 hours, assuming she did not actually take a meal break during the time she was automatically clocked out. Her hourly rate at the time was $13.00.

(c)     Amount of Unpaid Minimum Wages - The Lawsuit did not include a claim for minimum wage violations.

(d)     Amount of Unpaid Overtime Compensation – As stated above, Named Plaintiff and Opt In Plaintiff Denisse Calderon do not seek to recover unpaid overtime. Opt-In Plaintiff Marcha Auguste's claim for unpaid overtime compensation has a value of $23.70. Opt-in Plaintiff Nora Teresias's claim for unpaid overtime compensation has a value of $82.88.

(e)    Allocation of Wages and Liquidated Damages – For the entire class, including Opt-In Plaintiffs Marcha Auguste and Nora Teresias, each Class Member's Settlement Award is being allocated half to unpaid wages and half to liquidated damages.

(f)    Sufficiency of Liquidated Damages – Although Pineapple House disputes that liquidated damages are appropriate in an automatic meal break deduction case, particularly under the above-described circumstances, the agreement includes liquidated damages for the class.

(g)    Non-Cash Concessions – As described above, the Participating Class Members will only be releasing wage and hour claims. The Named Plaintiff and Opt-In Plaintiffs, in exchange for additional consideration, have signed supplemental settlement agreements in which they are agreeing to a general release, non-disparagement and a no re-hire provision. Senior Care is agreeing to provide them a neutral reference. These terms were negotiated at arms-length in the mediation and agreed to by all Parties.  They provide meaningful consideration to the Named Plaintiff and Opt-In Plaintiffs, particularly given that two of them have no claim for overtime damages and would not otherwise even be able to participate in the

settlement. None of them have any intent to bring any other claims against The Pineapple House or disparage The Pineapple House, nor do they have any desire to work for The Pineapple House again. They are therefore giving up what they consider to be very little in exchange for the monetary consideration they are receiving and the neutral job references.

(h) Attorneys' Fees – Class Counsel certifies that the attorneys' fees were negotiated separate and apart from the payments being made to the Named Plaintiff and each Opt-In Plaintiff, who are being paid a flat amount as set forth in their Individual Settlement Agreement.

(i) Attorney Hourly Rate – Class Counsel certifies that their hourly rates are: $400 per hour for Attorney R. Edward Rosenberg and $450 per hour for Attorney Ricardo J. Prieto (See Exhibit E, Attorney R. Edward Rosenberg's Declaration in Support), and that the total number of hours worked by Class Counsel are 25.5 (See Exhibit E).

(j) No Undisclosed Agreements – All counsel certify that that there are no other agreements between or among the parties. The only Agreements are the Collective Action Settlement Agreement and the Individual Supplemental Settlement Agreements, all of which are attached hereto for Court approval.

## ARGUMENT

### I.      Standards for FLSA Settlements

The parties to an FLSA action can resolve the dispute and enter into a valid waiver of the employee's FLSA claims in either of two ways:  First, an employee may settle and waive claims under the FLSA if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor.  29 U.S.C. § 216(c); *Lynn's Food Stores, Inc., v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); Second, an employee may settle and waive claims under the FLSA if the parties present a proposed settlement to a district court which approves the fairness of the settlement.  *Lynn's Food Stores*, 679 F.2d at 1353.  In discussing the approval of FLSA settlements, the Eleventh Circuit has noted:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context.  The employees are likely to be represented by an attorney who can protect their rights under the statute.  Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching.  If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354.

"The Court should be mindful of the strong presumption in favor of finding a settlement is fair." *Ford v. Property Preservation Experts, Inc.*, 2012 U.S. Dist. Lexis 107194 at *3 (M.D. Fla. July 31, 2012) (citing *Cotton v. Hinton*, 559 F. 2d 1326, 1331 (5th Cir. 1977)[1]).   An FLSA settlement may be approved as fair even where plaintiffs receive in settlement substantially less than the amount they originally claimed. *Rutland v. Visiting Nurse Assoc. of Central Fla., Inc.*, 2008 U.S. Dist. Lexis 61776 (M.D. Fla. July 29, 2008).  Discovery – including the production of records – as well as the risks associated with litigation and the viability of certain defenses, all may cause a plaintiff to settle for substantially less than the original amount claimed.  *See id.* (approving FLSA settlement where named plaintiff settled for approximately 6% of the wages she originally claimed).  In addition, the dispute over liquidated damages and the applicable statute of limitations may cause an FLSA plaintiff to accept substantially less in settlement then originally claimed. *See Ford, supra* (approving FLSA settlement where one opt-in plaintiff settled for less than 3% of his original claimed back wages).

## II.    The Back Wages and Liquidated Damages Payment Is Fair and Reasonable

Here, the settlement is fair because it is a reasonable compromise of the claims of the Class Members.  As discussed above, the settlement does not utilize

---

[1]  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (all decisions from the Fifth Circuit prior to October 1, 1981 are binding on the Eleventh Circuit).

any guessing or estimating that is often a staple of collective action settlements –
in this case the exact amount of automatic meal break deductions taken from each
Class Member was calculated, as were their potential damages utilizing their last
hourly rate using time and one half for overtime hours.  They were also given
credit for deductions during non-overtime weeks, with overtime weeks being
attributed thrice the value.  Those calculations produced each Class Member's
Proportionate Settlement Amount, which was then multiplied by the Net
Settlement Amount to determine their individual Settlement Award. This is the
most precise way possible to determine what would be fair and equitable for each
Class Member.

Even after the deductions from the Maximum Settlement Amount to arrive
at the Net Settlement, each participating Class Member will receive payment
equivalent to approximately 51% of the maximum damages they could have
received even if (a) they never took a break during any of those automatic
deduction, which is both highly unlikely and highly disputed by Defendants; (b)
they are compensated at their full hourly rate for those deductions even during
non-overtime weeks; and (c) they were to receive 100% additional liquidated
damages on their allegedly unpaid overtime. This amount represents a
extraordinarily fair settlement given the amount of unpaid overtime that was
claimed, the uncertainty of success on collective certification, the fact that over 25%

of the class had signed arbitration agreements with class action waivers and Senior Care's contention that all class members typically took their thirty minute meal break and did so without interruption and that there was therefore nothing illegal or improper about the deductions.

Given these factors, the Collective Action Settlement Agreement represents a fair and reasonable compromise of the claims in this litigation.

## III.    The Proposed Notice of Settlement and Claim Form Should Be Approved

The Court should also approve the proposed Notice of Settlement and Claim Form, copies of which are attached as Exhibits B and C.  The proposed Notice sufficiently informs each Class Member of the terms of the settlement, the factors involved in the calculation of each Class Member's Settlement Award, the amount they will receive as their Settlement Award if the opt to participate in the settlement, the opt-in process and timetable, the scope of the release, and the attorneys' fees and costs that were approved.

## IV.    The Individual Settlement Agreements Should Be Approved

The settlement also includes individual Settlement Agreements with general releases signed by the Named Plaintiff and each of the three Opt-In Plaintiffs.  The terms of those agreements and details regarding the reasons for and negotiations of those agreements are described in detail above.

**V.    The Attorneys' Fees and Costs Are Reasonable and Should Be Approved**

Additionally, the parties have agreed that Plaintiffs' counsel will receive $25,905.00 of the gross settlement funds as attorneys' fees (or 33% of the Maximum Settlement Amount), plus $912.00 for costs and expenses, as indicated in Attorney R. Edward Rosenberg's Declaration in Support (Exhibit E).   The sum was negotiated after determining and settling on the payments for each of the Named Plaintiff and Opt In Plaintiffs and the Maximum Settlement Amount. Furthermore, as discussed above, the attorneys' fees and costs are above and beyond the Settlement Awards that will see each Participating Class Member recover 51% of the maximum damages they could have received even if (a) they never took a break during any of those automatic deduction, which is both highly unlikely and highly disputed by Defendants; (b) they are compensated at their full hourly rate for those deductions even during non-overtime weeks; and (c) they were to receive 100% additional liquidated damages on their allegedly unpaid overtime.

Of the total award sought of $26,817.00 for fees and costs, $912.00 represents actual costs and expenses incurred by Plaintiffs' counsel, including court filing fees, pro hac vice fees and service of process.  Plaintiffs' counsel was aware such costs and expenses might not be recovered and, at the very least, would not be recovered until the litigation was successfully resolved.

The balance of $25,905.00 represents an award of attorneys' fees for the work performed by Plaintiffs' counsel. The total lodestar to date for the work performed by the two firms representing the Named Plaintiff, Opt-Plaintiffs and Class Members is $10,840.00. This reflects the time actually spent, in the exercise of reasonable judgment by the lawyers and staff involved and is reflected in the detailed time records for each of the firms. The work undertaken represents the work addressed above in connection with the investigation and filing of the lawsuit, the work undertaken in conjunction with the discovery and exchange of data related to the Named Plaintiff, Opt-Plaintiffs and Class Members and the work involved in negotiating and effectuating the Settlement. Each of the firms involved in the case had expertise and knowledge with respect to aspects of the litigation, including extensive and successful records in class action and wage hour litigation. The firms also communicated regularly so as to ensure that there was not unnecessary time incurred, nor duplication of effort.

Plaintiffs counsel's request for payment of fees in the amount of $25,905.00 represents a multiplier of 2.39. Given the risks presented by this litigation, the potential for some or all of the claims being compelled to multiple arbitrations and the results obtained, this multiplier is decidedly reasonable. Based on our experience, the Parties also expect that there will be significant time spent by Plaintiffs' counsel in the future administering the claims process and this

settlement, resolving issues with the Settlement Claims Administrator and Defense Counsel, and speaking with Class Members about the administration and the Settlement, bringing the multiplier below 1.   As discussed above, this was a case where the dollar value of each claim was relatively low because the claims related only to automatic meal deductions that were only made under certain circumstances and for a relatively short time period.  Defendants do not oppose the amount to be allocated as attorneys' fees and costs as set forth in the Parties' Settlement Agreement and agree that it is reasonable.

The settlement of attorneys' fees and costs was independent and agreed upon separately from the amounts calculated to be owed to Represented Plaintiffs and the Class Members.  "[W]hen attorney's fees are negotiated separately from the payment to plaintiff(s), 'an in depth analysis [of the reasonableness of the fees] is not necessary unless the unreasonableness is apparent from the face of the documents." *Gertz v. Coastal Reconstruction*, 2014 U.S. Dist. LEXIS 130302, *5 (M.D. Fla. Sept. 10, 2014) (citing *McGinnis v. Taylor Morrison*, Inc., 2010 U.S. Dist. LEXIS 143198 (M.D. Fla. Jan. 23, 2010); *King v. My Online Neighborhood, Inc.*, 2007 U.S. Dist. LEXIS 16135 (M.D. Fla. Mar. 7, 2007)) (internal bracket in original); *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (same).  "As long as counsel does not seek to recover anything further from Plaintiff, the recovery is not compromised by the fee agreement and the Court sees no reason to review it

further." *Garzon v. ProSweep Cent. Fla., LLC*, 2011 U.S. Dist. LEXIS 134703, *6 (M.D. Fla. Nov. 17, 2011). Thus, there is "no need to further scrutinize amount allocated for attorneys' fees and costs [as] they were negotiated separately and apart from the compensation paid to Plaintiff." *Welch v. Moonlite Hospitality Servs., LLC*, 2011 U.S. Dist. LEXIS 137145, *5, n. 2 (M.D. Fla. Nov. 28, 2011) (citations omitted). Accordingly, Plaintiffs' request for attorneys' fees and costs should be approved.

The Eleventh Circuit, has agreed that "attorneys who create a common fund are entitled to be compensated for their efforts from a reasonable percentage of that fund." *Stahl v. Mastec, Inc.*, 2008 WL 2267469, *1 (M.D. Fla. 2008); citing *Camden I Condominium Assoc., Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."). Courts in this District have stated:

> The following factors are considered in determining the appropriate percentage of the common fund to be awarded as fees: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. [citing *Camden, supra*] Notably, the Supreme Court and the Eleventh Circuit have held that it is appropriate that the attorney's fees be awarded on the entire Maximum Gross Settlement Amount

> even though amounts to be paid to settlement class members who do
> not file a claim form will remain the sole and exclusive property of
> the defendant.

*Stahl, Id.* (citations omitted). Here, the Parties agree that 33% is a reasonable percentage for attorneys' fees. Plaintiffs' counsel has extensive experience litigating FLSA collective actions and the results in this matter warrant such an amount, given Defendant's vigorous defense and the exceptional results obtained on behalf of Plaintiffs.

Case law from throughout the country supports the payment of attorneys' fees as a percentage of the total settlement amount. *See Prasker v. Asia Five Eight LLC, et. al*, 2010 WL 476009, *6 (S.D.N.Y. 2010) (approving 33% attorneys' fee award in wage and hour class action); *Duchesne v. Michael Cetta, Inc., et. al.*, 2009 WL 5841175, *3 (S.D.N.Y. 2009) (approving attorney fees of 32.2% and stating that the "percentage of recovery" method is consistent with the trend in the Second Circuit); *Faltaous v. Johnson and Johnson, et. al.*, 2007 WL 3256833, *10 (D.N.J. 2007) (stating that "attorneys' fees of approximately 30 percent of the common fund are also regularly awarded in labor and employment law class actions.") (internal citations omitted); *Mohney v. Shelly's Prime Steak, Stone Crab &Oyster Bar*, 2009 WL 5851465, *5 (S.D.N.Y. 2009) (awarding attorneys' fees of 33%); *Stahl,* 2008 WL 2267469 at *2 (M.D. Fla. 2008) (Judge Whittemore approving attorney fees of $3,744,500.00 out of a common fund of $13,137,365.00); *Reyes v. Buddha-Bar NYC,*

2009 WL 5841177 (S.D.N.Y 2009) (awarding attorneys' fees of 33 1/3%); *Noell v. Suncruz Casinos*, 2009 WL 541329, *1 (M.D. Fla. 2009) (Judge Moody approving attorney fee payment of 30%); and *Moultry v. Cemex, Inc.*, 8:07-cv-453-T-MSS (August 20, 2008) (Scriven, Mag. J.) (awarding attorneys' fees of 32.25%); *Kimmel et al., v. Venture Construction Co.*, Case No. 1:10-cv-01388-RLV-WEJ, Docs. 69, 70 (N.D. Ga. Nov. 4, 2010) (approving common fund class settlement on behalf of class of construction superintendents).

"[O]ne purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Manual for Complex Litigation*, 4th § 14.121. The Eleventh Circuit has stated, "from the beginning and throughout the case, expertise in negotiations and tactics often advances a client's cause more quickly and effectively. Here, Plaintiffs' counsel efficiently resolved this matter while recognizing Defendant's interest in avoiding additional time defending the matter, which would have increased Defendant's investment in the defense of the case and potentially decrease the settlement funds available to the settlement class. Defendant's counsel asserted vigorous defenses to Plaintiffs' claims, defenses which could have presented a *total defense* to the overtime claims at issue in this litigation. Despite these potential defenses, Plaintiffs' counsel pursued Plaintiffs' claims and successfully negotiated a very favorable settlement.

Plaintiffs' counsel was required to locate and interview numerous witnesses, discussed the facts of the case with each of the opt-ins, and undertook substantial research to prove this case. Plaintiffs, opt-in Plaintiffs and potential class members have all benefited from Plaintiffs' counsel's efforts. All these factors warrant that attorneys' fees in this matter of 33% be approved. The Parties agree this is a fair and reasonable amount to be allocated for attorneys' fees.

Accordingly, Plaintiffs' request for attorneys' fees and costs should be approved.

## **CONCLUSION**

The Settlement is reasonable and fair in all respects, particularly considering that at all times this litigation was vigorously contested.  Accordingly, the Parties respectfully request the Court approve the settlement.

**WHEREFORE,** the Parties respectfully request this Court enter an Order (1) approving the Settlement Agreement; (2) dismissing the Lawsuit with prejudice; (3) awarding Class Counsel their requested fees and costs; (4) approving the Notice of Settlement and Claim Form to be sent to the Class Members; (5) retaining jurisdiction and ordering the clerk to keep the case open until 45 days after the Extended Consent Deadline in order to allow the parties to file the Claim Forms; and (6) awarding such other and further relief as this Court deems just and proper.

Date: April 18, 2022                                    Respectfully submitted,

| | |
|---|---|
| By: ___/s/R. Edward Rosenberg___ | By: ___/s/Steven A. Siegel___ |
| R. Edward Rosenberg | Steven A. Siegel |
| Fla. Bar No. 88231 | Fla. Bar No. 497274 |
| rer@sorondorosenberg.com | ssiegel@fisherphillips.com |
| Sorondo Rosenberg Legal P.A. | Fisher & Phillips LLP |
| 1825 Ponce de Leon Boulevard | 450 East Las Olas Boulevard |
| Suite 329 | Suite 800 |
| Coral Gables, Florida 33134 | Fort Lauderdale, Florida 33301 |
| Telephone (786) 708-7550 | Telephone (954) 525-4800 |
| | |
| Ricardo J. Prieto | *Attorneys for Defendant* |
| Texas Bar No. 24062947 | |
| rprieto@eeoc.net | |
| Melinda Arbuckle | |
| Texas Bar No. 24080773 | |
| marbuckle@eeoc.net | |
| Shellist Lazarz Slobin LLP | |
| 11 Greenway Plaza | |
| Suite 1515 | |
| Houston, Texas 77046 | |
| Telephone (713) 621-2277 | |
| | |
| *Attorneys for Plaintiff* | |