UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

YOLANDA SANTIAGO,
individually and on behalf of all
others similarly situated,

    Plaintiff,

v.                                                                                  Case No.:  2:22-cv-21-KCD

CONCIERGE SENIOR LIVING,
LLC and SENIOR CARE
RESIDENCES SAPPHIRE LAKES
AT NAPLES, LLC.,

    Defendants.
_____/

# ORDER[1]

Before the Court is the parties' Joint Motion for Approval of Settlement. (Doc. 24.) Because this is a collective action, the parties also ask the Court to retain jurisdiction and approve their proposal for notifying potential opt-in plaintiffs. For the reasons below, the motion is denied without prejudice.

## I. Background

Plaintiff Yolanda Santiago previously worked for Defendants Senior Care Residences Sapphire Lakes at Naples, LLC and Concierge Senior Living,

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

LLC. Following her separation, Santiago filed this collective action for unpaid overtime wages under the Fair Labor Standards Act (FLSA). The complaint centers on Defendants' practice of deducting a meal break from its employees pay when they did not take a break. (*See* Doc. 1.) Soon after suing, Santiago was joined by three other opt-in plaintiffs—Denisse Calderon, Nora Teresias and Marcha Auguste. The operative complaint seeks unpaid overtime wages plus liquidated damages and attorneys' fees. (Doc. 1.)

In their answer, Defendants denied violating the FLSA. (Doc. 17.) They also alleged several affirmative defenses, including that the plaintiffs were exempt and sought damages outside the limitations period. (*Id.*)

The parties now move the Court to approve their settlement. (Doc. 24.) They explain that several issues were disputed, litigating the case would be expensive and time consuming, and a bona fide dispute existed that led to conciliation. Thus, according to the parties, the settlement is a reasonable and fair compromise.

As for specifics, Defendants will pay $78,500.00 as a maximum settlement amount. (Doc. 24 at 5.) That sum includes attorneys' fees and costs, all amounts to be paid to "Class Members," all amounts to be paid to the plaintiffs (named and opt-in), the mediator fees, and the claims administrator's fees and costs. (*Id.*) Eligible settlement Class Members include about 69 current and former employees who (a) were paid hourly, (b) worked at the facility known as The Pineapple House at Sapphire Lakes between June 1,

2020 and May 31, 2021; and (c) who were subject to automatic meal break deductions during a week in which they worked over forty hours or would have worked over forty hours but for the automatic meal break deduction. (*Id.* at 5-6.)

Each Class Member (provided they opt-in) will receive a settlement amount determined as follows. First, the total amount of time automatically deducted between June 1, 2020 and May 31, 2021 from each Class Member both during overtime and non-overtime weeks was ascertained. The value of that time was then calculated at the Class Member's last hourly rate. Overtime hours were valued at time and one-half. Time automatically deducted during overtime weeks was valued at twice that of time automatically deducted during non-overtime weeks. Each Class Member's amount was then divided by the total amount to arrive at the Class Member's proportionate share of the net settlement (*i.e.,* the maximum settlement less expenses and fees). A Class Member will receive that settlement figure by timely returning a completed claim form and becoming a participating litigant (more on that below).

Notably, the calculation above uses no guessing or estimating. With Defendants' records, the parties identified the exact amount of automatic meal break deductions taken from each Class Member, and their last hourly rate. According to the parties, after cost and fee deductions, each participating Class Member will receive payment equivalent to about 51% of the maximum damages they could have received even if (a) they never took a break during

those automatic deduction, which is both unlikely and highly disputed by Defendants; (b) they are compensated at their full hourly rate for those deductions even during non-overtime weeks; and (c) they were to receive 100% additional liquidated damages on their allegedly unpaid overtime. (Doc. 24 at 14.)

Two more items. First, the named plaintiffs—Santiago, Calderon, Teresias and Auguste—executed individual settlement agreements that contain a general release, and non-disparagement and no re-hire provisions. (Doc. 24 at 10.) Second, the settlement agreement contains an attorney fee award of 33% of the maximum settlement amount, plus expenses of $912.00. (Doc. 24 at 8.)

## II. Legal Framework

The FLSA establishes minimum wages and maximum hours "to protect certain groups of the population from substandard wages and excessive hours which endanger[] the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706 (1945).[2] If an FLSA violation is shown, the employer must generally pay the damaged employee unpaid wages, an equal amount as liquidated damages, and attorney's fees and costs. *See* 29 U.S.C. § 216(b).

---

[2] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

Following the Eleventh Circuit's decision in *Lynn's Food Stores Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), courts in this district have taken the view that "suits to recover back wages under the FLSA may be settled only with the approval of the district court." *Flood v. First Fam. Ins., Inc.*, 514 F. Supp. 3d 1384, 1386 (M.D. Fla. 2021). The facts in *Lynn's Food* were unique, and it's not clear that the holding was meant to sweep so broadly. *See, e.g.*, *Slaughter v. Sykes Enterprises, Inc.*, No. 17-CV-02038-KLM, 2019 WL 529512, at *3 (D. Colo. Feb. 11, 2019). But no matter how *Lynn's Food* should be viewed, neither party is questioning its applicability here. Thus, the Court will go forward assuming that it must approve the settlement.

Under *Lynn's Food* and its progeny, the parties to an FLSA settlement must present their agreement for a fairness evaluation. If the agreement reflects a fair and reasonable compromise of their dispute, the court may approve it. *See, e.g.*, *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307-08 (11th Cir. 2013). There is no standard test or benchmark to measure a settlement's fairness. Courts instead look to various factors, including (1) the existence of collusion behind the settlement; (2) the complexity, expense, and likely duration of the case; (3) the stage of the proceedings and the discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel. *Leverso v. SouthTrust Bank of Ala. Nat. Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994). Courts weigh these factors against a background presumption that the parties

reached a fair agreement. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

### III. Analysis

Based on the parties' representations and a review of the docket materials, the Court finds that the agreement is a fair and reasonable compromise of a disputed claim. Santiago (and the proposed class as a whole) was represented by experienced counsel who had sufficient time and information to evaluate the potential risks and benefits of settlement. While denying liability, and raising the specter of several meritorious defenses, Defendants have agreed to pay a significant sum to settle. As mentioned, each opt-in plaintiff will receive roughly half of what they would collect under a best-case scenario. (*See* Doc. 24 at 13-15.)

There is no stated or apparent collusion. Without a settlement, the parties would need to continue discovery, possibly engage in dispositive motion practice, and proceed to trial, and the plaintiffs would risk receiving nothing. The parties and their counsel believe this is a reasonable settlement. (Doc. 24 at 15.)

The settlement agreement has no general release—participating class members will only release wage and hour claims, which is acceptable. (Doc. 24 at 10); *Heath v. Hard Rock Cafe Int'l (STP), Inc.*, No. 6:10-CV-344-ORL-28, 2011 WL 5877506, at *4 (M.D. Fla. Oct. 28, 2011). The named plaintiffs, however, have negotiated a general release with Defendants. While such

6

provisions can be problematic, *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351-52 (M.D. Fla. 2010), such concerns are not present here because the individual releases are supported by separate consideration. (*See* Doc. 24 at 10.)

The same goes for the non-disparagement and no re-hire provisions in the named plaintiffs' releases. While courts have found similar provisions unfair, any such concerns are minor here considering Defendants' size and thus the limited impact of the waivers. Furthermore, the individual plaintiffs have attested they do not desire to work for Defendants again. Finally, these terms were negotiated at arm's-length, with the advice of counsel, and Defendants have agreed to provide neutral job references. On those facts, the Court declines to interject itself and disrupt the parties' bargain. The individual releases are fair and appropriate. *See Robertson v. Ther-Rx Corp.*, No. 2:09CV1010-MHT, 2011 WL 1810193, at *2 (M.D. Ala. May 12, 2011).

The settlement agreement also contains a confidentiality clause that requires participating class members "to keep the terms, conditions and existence of the settlement and this Agreement strictly confidential." (Doc. 24-1 at 15.) Some judges will strike a confidentiality provision as contravening FLSA's purpose and undermining the Department of Labor's efforts to inform employees of their rights. *See, e.g.*, *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242–43 (M.D. Fla. 2010). The confidentiality provision in the settlement agreement here should remain because it also benefits the participating class

7

members, and the parties have filed the agreement on the public docket, which allows the public to view it and understand what happened.

As mentioned, the parties have requested that the Court approve their proposed claim forms and retain jurisdiction to allow for opt-in plaintiffs to join the suit. (Doc. 24 at 2-3.) The Court has reviewed the various exhibits and finds them appropriate, save for the issue discussed below.

This finally brings the Court to the matter of attorneys' fees, which is where the settlement falls apart. The parties have agreed that Plaintiffs' counsel will receive $25,905.00, plus $912.00 for costs and expenses. (Doc. 24 at 16.) This sum is a contingency fee based on the maximum settlement amount. (*See* Doc. 24-2, Claims Notice at 6 ("The Court has approved payment of thirty-three percent of the Maximum Settlement Amount for attorneys' fees and reimbursement of reasonable litigation costs and expenses.").) As much as the Court wants to put this matter to bed, it cannot approve such a fee shifting arrangement. *See, e.g.*, *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009); *Zegers v. Countrywide Mortg. Ventures, LLC*, 569 F. Supp. 2d 1259, 1267 (M.D. Fla. 2008).

In sum, the proposed settlement is appropriate in all terms except for attorneys' fees. As the Court sees it, that leaves the parties with two options: (1) renegotiate the settlement, with counsel taking a fee award under the appropriate framework; or (2) the Court can approve the settlement agreement as-is, limiting the attorneys' fee award to the lodestar amount that Plaintiffs'

8

counsel has offered. The existing settlement agreement seems to contemplate both options. (Doc. 24-1 at 10.) Either way, however, the parties will need to submit new claims forms and notices.

Accordingly, it is **ORDERED**:

1. The parties' Joint Motion for Approval of Settlement (Doc. 24) is denied without prejudice;

2. By September 9, 2022, the parties must either (i) file a new motion and settlement agreement that complies with the legal framework discussed above, or (ii) notify the Court how they would otherwise like to proceed.

**DONE AND ENTERED** in Fort Myers, Florida this August 25, 2022.

*Kyle C. Dudek*
Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record

9